USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                         :

FRITZ T. JARVOIS,                      :
                                         :

                Plaintiff,      :

                                         :

         -against-            :                 1:18-cv-3997-GHW

CAROLE FERRARA and THOMAS   :
LIBRETTI,                          :         MEMORANDUM OPINION
                                         :           AND ORDER

                Defendants.   :

--------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

*Pro se* plaintiff Fritz Jarvois brings claims against two individuals with whom he used to work. Mr. Jarvois alleges that the Defendants discriminated against him based on his age, race, and religion. Mr. Jarvois' claims fail for two reasons. First, Mr. Jarvois brings claims under a statute that does not provide for liability against individuals. Second, Mr. Jarvois fails to allege sufficient facts to state a cause of action. Accordingly, the Defendants' motion to dismiss is GRANTED.

## II.    BACKGROUND

### a.  Facts

Mr. Jarvois left the narrative fact section of his complaint completely blank. *See* Dkt. No. 5 ("Compl.") at 6. Instead, he has attached 134 pages of documents to his complaint.[1] These documents consist of performance reviews, correspondence between him and the Defendants relating to his job performance, as well as complaints that Mr. Jarvois filed with his union. The complaint describes Mr. Jarvois as a 55-year-old African American male who identifies himself as a Rastafarian. *See* Compl. at 5. Mr. Jarvois worked as a porter at a building located at 73 Fifth

---

[1] The Court may consider documents attached to a complaint on a motion to dismiss. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 151 (2d Cir. 2002).

Avenue from approximately 2009 until his termination on January 9, 2018. *See* Compl. at 11, 13, 25; Compl., Ex. A at 20, 74. Mr. Jarvois' job was to "ensure the proper care and maintenance of the building" by completing "basic janitorial tasks." Compl. at 24-25. His responsibilities included tasks such as taking out the garbage, cleaning the premises, and shoveling the sidewalk and stairs during the winter. *Id.* at 25; *Id.*, Ex. A at 91-95. The complaint suggests that Mr. Jarvois worked at a building that was owned by multiple entities, including 73 Fifth Avenue Condominium and 73 Store Corp. ("73 Store Corp."). *See* Compl., Ex. A at 31, 75. 73 Store Corp. used Carole Ferrara Associates, Inc. ("CFA"), a property management company, as its managing agent. Compl. at 85. CFA performed upkeep and maintenance for the building. *See, e.g.*, Compl. at 13. Carole Ferrara was Mr. Jarvois' supervisor. The complaint demonstrates that, in that capacity, she set his schedule, oversaw his timesheets, evaluated his work performance, and monitored his attendance. *See, e.g.*, Compl. at 18, 19, 24; Compl., Ex. A at 8. Thomas Libretti was the superintendent at the building at which Mr. Jarvois worked. Compl., Ex. A at 103. The complaint suggest that Libretti also evaluated Mr. Jarvois' work performance. *Id.* at 97-98; 103-04. It is not clear from the complaint which of the corporate entities was Mr. Jarvois' employer. A number of documents in the complaint suggest that Mr. Jarvois may have been employed by 73 Store Corp., while others suggest that he was employed by CFA. *See* Compl., Ex. A at 33-34, 110; *cf. id.* at 71. In any event, drawing all allegations and facts in Mr. Jarvois' favor, the complaint indicates that he was employed at all times by one of the corporate entities.

Mr. Jarvois' complaint indicates that his supervisors asserted that he had committed numerous infractions at work beginning in December of 2016. *See, e.g.*, Compl. at 13, 15, 24; Compl., Ex. A at 96-98, 104, 110. These asserted infractions included Mr. Jarvois' alleged failure to complete his duties in a timely manner, his failure to complete the tasks set forth in his job description, and his failure to adhere to his work schedule. *See id.* Mr. Jarvois was disciplined for

these infractions. He received numerous written warnings, was suspended on three occasions, and was ultimately terminated on January 9, 2018. Compl. at 25. Before his termination, Mr. Jarvois filed a number of grievances with his union related to his hours, wages, and sick and vacation pay.[2] *See* Compl., Ex. A at 11-30. He also commenced an action with the New York State Division of Human Rights against CFA after his termination. *See* Compl. at 7, 9-10. Mr. Jarvois' complaint does not include a right to sue letter from the EEOC.

Because Mr. Jarvois proceeds *pro se*, the Court "is obligated to construe [his] pleadings and papers liberally." *LaBounty v. Adler*, 933 F.2d 121, 122 (2d Cir. 1991). In his complaint, Mr. Jarvois provides his age and race. Specifically, Mr. Jarvois lists his year of birth and writes "African American/Rastafarian" in response to the question asking him for his race. Compl. at 5. Aside from this information, there are no other facts or allegations in any documents that form the complaint that pertain to Mr. Jarvois' age or race. The complaint also offers scant facts related to Mr. Jarvois' religion. Mr. Jarvois identifies himself as a Rastafarian in the complaint. Compl. at 5. Other than this, the only reference to Mr. Jarvois' religion involves a request that he made to change his work schedule. In December 2016, Mr. Jarvois e-mailed Ferrara and asked that she not schedule him to work on Saturday so that he could observe the Sabbath.[3] Compl., Ex. A at 4-6. The complaint suggests that Ferrara promptly accommodated his request.

The Court must construe the allegations in Mr. Jarvois' complaint to raise the strongest claims that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). In his complaint, Mr. Jarvois checked boxes indicating an intent to state claims for race and religion-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), race-based discrimination under 42 U.S.C. §1981, age-based discrimination under the Age Discrimination

---

[2] The complaint includes documents suggesting that Mr. Jarvois' union may be in the process of pursuing his claims against CFA and 73 Corp. in arbitration. *See, e.g.*, Compl., Ex A. at 45-46.
[3] Before December 2016, Mr. Jarvois worked on Saturdays. *See* Compl., Ex. A at 84.

in Employment Act of 1967 (the "ADEA"), as well as age, race, and religion-based discrimination under state law. *See* Compl. at 5. The Court, however, does not limit its analysis of Mr. Jarvois' complaint to these claims. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 155 (2d Cir. 2017). Therefore, the Court construes Mr. Jarvois' complaint to assert the following causes of action: (i) racial discrimination under Title VII; (ii) religious discrimination under Title VII; (iii) retaliation under Title VII; (iv) racial discrimination under § 1981; (v) age-discrimination under the ADEA; (vi) breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act; and (vii) racial, religious, and age-based discrimination under the New York State Human Rights Law and the New York City Human Rights Law.

b. <u>Procedural History</u>

Mr. Jarvois filed his initial complaint on May 3, 2018. Dkt. No. 2. On May 15, 2018 Chief Judge McMahon ordered Mr. Jarvois to amend the complaint. Dkt. No. 4. In that order, Chief Judge McMahon directed to Mr. Jarvois to "provide a short and plain statement of the relevant facts supporting each claim against each defendant." *Id.* She also directed Mr. Jarvois, *inter alia*, to "give the names and titles of all relevant persons, describe all relevant events . . . [and] to describe how each defendant's acts or omissions violated [his] rights." *Id.* Mr. Jarvois filed his amended complaint on July 10, 2018, which is the operative complaint in this case. *See* Compl. Despite the directions in Chief Judge McMahon's order, the only action Mr. Jarvois took to amend the complaint was to attach additional documents to it.

Defendants moved to dismiss the complaint on February 28, 2019. Dkt. No. 22. Mr. Jarvois filed his opposition on April 2, 2019. Dkt. No. 27. Defendants submitted their reply on April 8, 2019. Dkt. No. 30.

III. **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint

must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because Mr. Jarvois is proceeding *pro se*, the Court must liberally construe his allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman*, 470 F.3d at 474; *see also, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed pro se, it must be construed liberally to raise the strongest claims it suggests.") (internal citation and quotation marks omitted). Courts must afford pro se plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). Nevertheless, "dismissal of a pro se complaint is . . . appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

When deciding a motion to dismiss, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736

F.3d 213, 219 (2d Cir. 2013).

## IV. DISCUSSION

### a. Personal Jurisdiction over Libretti

The Court dismisses Mr. Jarvois' claims against Libretti for failure to comply with Federal Rule of Civil Procedure 4(m). Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve the summons and complaint on a defendant within ninety days of filing the complaint. Fed. R. Civ. P. 4(m). The Rule, in relevant part, provides:

> If a defendant is not served within [ninety] days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "It is clear under the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good cause,'" and "[t]he first clause of Rule 4(m), which makes no mention of good cause, grants discretion to district courts in a backhanded fashion by dictating that they . . . must decide to dismiss . . . or decide not to dismiss. But no criteria for this decision are supplied in the rule itself." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). In determining whether a discretionary extension is appropriate in the absence of good cause, "a court should consider: '(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of [the] plaintiff's request for relief from the provision.'" *Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 145 (S.D.N.Y. 2016) (quoting *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013)); *see also DeLuca v. Access IT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).

While under Rule 4(c)(1) "[t]he plaintiff is responsible for having the summons and

complaint served within the time allowed by Rule 4(m)," there are exceptions to the Rule. For instance, a party may request that service be made by a U.S. Marshal, and when such a request is made by a party proceeding *in forma pauperis*, the request must be granted. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

A party proceeding *in forma pauperis*, however, is not relieved of all responsibility with respect to service. The Second Circuit has explained:

> If a plaintiff proceeding [*in forma pauperis*] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.

*Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012). Furthermore, even in cases in which a party utilizes the U.S. Marshals Service to effect service, the Second Circuit has held that "incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).

Mr. Jarvois was granted leave to proceed *in forma pauperis* on May 4, 2018. Dkt. No. 3. Because Mr. Jarvois was granted leave to proceed *in forma pauperis* in this action, he was entitled to rely on the U.S. Marshals Service to serve the Defendants. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d). Accordingly, on October 2, 2018, the Court issued an order of service directing the Clerk of Court to complete a USM-285 form for both Ferrara and Libretti so that the U.S. Marshals Service (the "Marshals") could serve them. *See* Dkt. No. 7. The Marshals successfully served Ferrara but were unable to serve Libretti. *See* Dkt. Nos. 10, 11. Pursuant to *Valentin v. Dinkins*, the Court directed Ferrara to provide the last known address for Libretti. 121 F.3d 72 (2d Cir. 1997); *see* Dkt. No. 15. After receiving Libretti's last known address from Ferrara, the Court issued another order directing the Marshals to serve Libretti at the new address. *See* Dkt. No. 17. The Marshals attempted to serve Libretti at this address but were told that he no longer lived there. Dkt. No. 21.

*Again*, therefore, the Marshals were unable to serve Libretti. *See* Dkt. No. 21.

In light of the above, the Court dismisses Mr. Jarvois' claims against Libretti for failure to comply with Rule 4(m). First, Mr. Jarvois has not complied with his obligations with respect to service. As explained above, Mr. Jarvois was granted leave to proceed *in forma pauperis* and, as such, was permitted to rely on the Marshals to serve Libretti. Despite two unsuccessful attempts, however, Mr. Jarvois did not "request a further extension of time for" the Marshals to effect service as is required under *Meilleur*. 682 F.3d at 63.

Second, and more importantly, the Court cannot conclude "that proper service may still be obtained." *Romandette*, 807 F.2d at 311. The Court issued an order of service directing the Marshals to serve Libretti at the address that Mr. Jarvois provided for him. Dkt. No. 7. The Marshals attempted to serve Libretti at this address, but were unable to do so because they discovered that he no longer worked at that location. Dkt. No. 10. The Court then directed the Marshals to serve Libretti at his last known address, as provided by Ferrara. Dkt. No. 17. Again, the Marshals were unable to serve Libretti. Dkt. No. 21.

On this record, the Court cannot conclude that proper service may still be obtained. The Marshals have made two separate attempts to serve Libretti at two different addresses. This is not a case in which dilatoriness or inaction on the part of the Marshals impeded a *pro se* plaintiff's ability to prosecute his case. *Cf. Jones v. Westchester Cty.*, 182 F. Supp. 3d 134, 144 (S.D.N.Y. 2016); *McCalmann v. Partners in Care*, No. 01-CV-5844, 2002 WL 856465, at *1 (S.D.N.Y. Apr. 25, 2002). Furthermore, the Court is unaware of a viable location at which Mr. Libretti may be served. Accordingly, because Mr. Jarvois has not served Libretti and, furthermore, because it does not appear that proper service "may still be obtained," the Court dismisses his claims against Libretti without prejudice. *Romandette*, 807 F.2d at 311.

To the extent Mr. Jarvois wishes to file an amended complaint to assert claims against Libretti, the Court is willing to entertain a request from Mr. Jarvois to extend the deadline to serve such an amended complaint.[4]

      b.  <u>Mr. Jarvois' Claims under Title VII and the ADEA</u>

      i.  *Title VII does not Provide for Individual Liability*

Title VII makes it unlawful "for an employer . . . to discharge any individual, or otherwise . . . discriminate," on the basis of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). Furthermore, Section 704(a) of Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Mr. Jarvois' claims under Title VII fail at the outset because individuals are not subject to liability under Title VII. *See Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *see also Mussallihattillah v. McGinnis*, 684 F. App'x 43, 47 (2d Cir. 2017) (summary order) (holding that plaintiff's Title VII claims "against the individual defendants fail as a matter of law"). Because Title VII does not provide for individual liability, Mr. Jarvois' claims of racial and religious discrimination as well as retaliation fail. Accordingly, Mr. Jarvois' Title VII claims against Ferrara are dismissed. Mr. Jarvois is denied leave to replead his Title VII claims against Ferrara because the Court concludes that any further attempt to plead Title VII claims against an individual would be futile.[5] *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,*

---

[4] The Court observes that the claims against Libretti suffer from the same deficiencies as those asserted against Ferrara. Nevertheless, the Court does not have personal jurisdiction over Libretti and, therefore, does not reach the merits of Mr. Jarvois' claims as asserted against Libretti. *See Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) ("Before a federal court may exercise personal jurisdiction over a defendant" and address the merits of the claims against the defendant, "the procedural requirement of service and summons must be satisfied.") (citation and internal quotation marks omitted).

[5] Mr. Jarvois' Title VII claims also fail because it is apparent from the face of his complaint that he has not exhausted his administrative remedies. A plaintiff must obtain a right-to-sue letter before commencing a Title VII action. *See* 42 U.S.C. § 2000e-5(b),(f)(1). In the complaint, Mr. Jarvois checked the box "no" next to the question asking whether he has received a right to sue letter from the EEOC. *See* Compl. at 7. Furthermore, Mr. Jarvois has not attached a right to sue letter from the EEOC to his complaint. Here, even drawing the allegations in the complaint liberally and in the light most favorable to Mr. Jarvois, it is clear from the face of his complaint that he did not exhaust his administrative remedies. Therefore, his claims under Title VII also fail on this alternate basis.

106 F.3d 11, 18 (2d Cir. 1997).

    *ii. Mr. Jarvois has not Pleaded Facts to Support his Claim for Age Discrimination under the ADEA*

  Mr. Jarvois also alleges that the Defendants discriminated against him because of his age. This claim fails.  The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  The statute protects individuals who are at least 40-years-old.  29 U.S.C. § 631(a).  In his complaint, Mr. Jarvois alleges that he is over 40-years-old.  *See* Compl. at 5.  However, Mr. Jarvois' age discrimination claim under the ADEA fails because the documents attached to his complaint say nothing about his age other than the year in which he was born.

  The Court also observes that multiple decisions by judges in this District have held that the ADEA does not subject individuals to personal liability.  *See, e.g.*, *Lopez v. New York City Dep't of Educ.*, No. 17-cv-9205 (RA), 2019 WL 2647994, at *3 (S.D.N.Y. June 26, 2019) (citing *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (affirming dismissal of Title VII and ADEA claims against individual defendants because "neither statute subjects individuals, even those with supervisory authority over the plaintiff, to personal liability"); *see also Williams v. New York City Dep't of Educ.*, No. 17-cv-1996 (AJN), 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 338 (S.D.N.Y. 2016) (collecting cases in which courts in this Circuit have held that the ADEA does not impose liability on individual defendants).

  Because the ADEA does not provide for individual liability, the Court concludes that any further attempt to assert ADEA claims against Ferrara would prove futile.  Accordingly, the Court dismisses this claim and denies Mr. Jarvois leave to replead.

  c. <u>Claim Under § 1981</u>

  Mr. Jarvois' claim for racial discrimination under § 1981 similarly fails because he has not

pleaded facts sufficient to support a claim. To state a claim under § 1981, "plaintiffs must allege

facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2)

defendants' intent to discriminate on the basis of race; and(3) discrimination concerning one of the

statute's enumerated activities." *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)

(citation omitted). To survive a motion to dismiss claims brought under § 1981, a plaintiff must

plead more than conclusory allegations of racial discrimination. *See Burgis v. N.Y.C. Dep't of

Sanitation*, 798 F.3d 63, 68–69 (2d Cir. 2015), *cert denied*, 136 S. Ct. 1202 (2016) (affirming district

court's decision granting motion to dismiss plaintiff's claims under § 1981where plaintiff "fail[ed] to

allege in other than conclusory fashion any specific instances of discrimination.")

Here, Mr. Jarvois' complaint is devoid of even conclusory allegations of discrimination based

on race. Accordingly, Mr. Jarvois' § 1981 claim against Ferrara is dismissed. Because the Court

cannot conclude that Mr. Jarvois' claim asserting racial discrimination under § 1981 is futile, the

Court grants him leave to replead this claim. *See Cruz*, 742 F.3d at 523; *see also Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000) (recognizing that "[a] pro se complaint is to be read liberally" and that

"the court should not dismiss without granting leave to amend at least once . . . .").

### d. Alleged Breach of Collective Bargaining Agreement

#### i. *Labor Management Relations Act*

In his opposition to the Defendants' motion to dismiss, Mr. Jarvois alleges that the

Defendants did not "follow[ ] the protocols" as "set forth by the bargaining agreement." Dkt. No.

27 at 3.[6] Mr. Jarvois then lists complaints, write ups, and suspensions that the Defendants issued

against him. *Id.* The Court construes Mr. Jarvois' opposition to argue that the Defendants violated

a collective bargaining agreement.[7] Because "Section 301 of the [Labor Management Relations Act]

---

[6] A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

[7] In their motion to dismiss, Defendants argue that any claims Mr. Jarvois asserts alleging breach of the collective

. . . 'governs actions by an employee against an employer for breach of a collective bargaining agreement,'" the Court construes Mr. Jarvois to assert a claim under § 301 of the Labor Management Relations Act (the "LMRA"). *Tand v. Solomon Schechter Day Sch. of Nassau Cty.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990)). "Suits arising under Section 301 include 'those seeking to vindicate uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge.'" *Id.* (quotation marks omitted) (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562 (1976)).

The LMRA provides for federal jurisdiction over suits arising from alleged breaches of collective bargaining agreements between labor unions and employers. *See* 29 U.S.C. § 185(a). However, as a general matter, LMRA claims may not be asserted against parties that are not signatories to the collective bargaining agreement in question.[8] *See, e.g.*, *Aponte v. Buono*, No. 11-CV-1077 (CBA) (MDG), 2011 WL 6812924, at *7 (E.D.N.Y. Dec. 28, 2011) (explaining that plaintiff could not sue party that was not a signatory to the collective bargaining agreement under LMRA § 301); *Gorenflo v. Penske Logistics*, 592 F. Supp. 2d 300, 306-07 (N.D.N.Y. 2009) (explaining that LMRA claims may not be asserted against parties that are not signatories to the collective bargaining agreement); *Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Const. Corp.*, No. 04-cv-0915 (CPS), 2007 WL 526621, at *4 (E.D.N.Y. Feb. 13, 2007) ("The [LMRA] extends only to suits brought against defendants who are parties to the underlying collective bargaining agreement."); *Duane Reade v. Allied Trades Council*, No. 04-cv-3542 (BSJ), 2005 WL 3038645, at *4 (S.D.N.Y. Oct. 7, 2005).

---

bargaining agreement were decided by an arbitration between 73 Corp. and Mr. Jarvois' supposed union. *See* Dkt. No 22 at 10-11. The arbitration decision that Defendants reference is neither attached to the complaint nor incorporated by reference. Accordingly, the Court has not considered this argument in its decision regarding Mr. Jarvois' § 301 claim.

[8] The Second Circuit has recognized limited circumstances under which a non-signatory to a collective bargaining agreement may be bound. *See Local Union No. 38 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004). Those circumstances are not present in this case.

Mr. Jarvois has provided the Court with little information about the collective bargaining agreement that he references in his opposition. The documents in his complaint suggest that the union and his employer were signatories to the collective bargaining agreement, *see* Compl., Ex. A at 31; however, fatal to Mr. Jarvois' § 301 claim is that his filings are devoid of any suggestion that the Defendants are signatories to the collective bargaining agreement. Because a plaintiff can only state a claim under LMRA § 301 against parties to the collective bargaining agreement, the Court dismisses this claim. *See, e.g., Gorenflo*, 592 F. Supp. 2d at 306-07 (dismissing plaintiff's LMRA § 301 claim asserted against individual defendants where his complaint failed to allege that they were signatories to the collective bargaining agreement). The Court grants Mr. Jarvois leave to replead this claim. *See Cruz*, 742 F.3d at 523.

## ii. Due Process

In his opposition to the Defendants' motion, Mr. Jarvois also alleges that the Defendants "denied [him] due process set forth by the bargaining agreement." Dkt. No. 27 at 3. To the extent Mr. Jarvois seeks to assert a constitutional claim under the Fifth or Fourteenth Amendment against the Defendants for violating the collective bargaining agreement, such a claim fails. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). Here, Mr. Jarvois asserts claims exclusively against two individuals. He does not contend that either of those individuals' conduct constitutes state action. To the extent Mr. Jarvois asserts a constitutional claim, such a claim fails because he has not alleged state action. Because the Court concludes that any further attempt by Mr. Jarvois to assert a constitutional Due Process claim against Ferrara would prove futile, the Court dismisses this claim with prejudice.

e.   State Law Claims

To the extent that Mr. Jarvois asserts claims under state law, the Court declines to exercise supplemental jurisdiction over any such claims.  Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, pursuant to 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over a plaintiff's state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction."  The Second Circuit counsels against exercising supplemental jurisdiction in such a situation:  "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'"  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano* v. *Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of Mr. Jarvois' claims based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction, the Court declines to exercise its supplemental jurisdiction over Mr. Jarvois' state law claims to the extent that he asserts them in his complaint.  *See* 28 U.S.C. § 1367(c)(3).  Accordingly, any such claims are dismissed without prejudice.

V.     **CONCLUSION**

For the reasons stated above, Mr. Jarvois' claims as asserted against Libretti are dismissed without prejudice.   Mr. Jarvois' claims under Title VII as asserted against Ferrara are dismissed with prejudice.  Mr. Jarvois is denied leave to replead these claims.  Mr. Jarvois' claims under the ADEA as asserted against Ferrara are dismissed without prejudice.  Mr. Jarvois is granted leave to replead these claims.  Mr. Jarvois' claims under § 1981 as asserted against Ferrara are dismissed without prejudice.  Mr. Jarvois is granted leave to replead these claims.  Mr. Jarvois' claim under § 301 of the

LMRA as asserted against Ferrara is dismissed without prejudice. Mr. Jarvois is granted leave to replead this claim. Mr. Jarvois' constitutional Due Process claim as asserted against Ferrara is dismissed with prejudice. Mr. Jarvois is denied leave to replead this claim. Mr. Jarvois' state law claims are dismissed without prejudice. Any amended complaint must be filed no later than 30 days after the date of this order.

The Court requests that counsel for Defendants provide Mr. Jarvois with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Court for the Southern and Eastern Districts of New York 7.2

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 22.

SO ORDERED.

Dated: August 19, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge