USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/9/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                                 :

FRITZ T. JARVOIS,                    :
                                 :

                Plaintiff,     :
                                 :

        -against-          :            1:18-cv-3997-GHW
                                 :

CAROLE FERRARA and THOMAS  :      MEMORANDUM OPINION
LIBRETTI,                          :          AND ORDER
                                 :

               Defendants.    :

-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

    *Pro se* Plaintiff Fritz Jarvois worked as a porter in a building managed by Defendants. He alleges that they discriminated against him based on his age, race, and religion. This is not the first time this Court has considered these issues. The Court dismissed all of Mr. Jarvois' federal claims previously and issued an opinion granting him leave to amend some of his claims. Mr. Jarvois missed the deadline to amend his complaint but because he did not receive the opinion, this Court vacated the judgment and again gave Mr. Jarvois leave to amend. Mr. Jarvois thereafter submitted a letter that the Court construes as an amended complaint. Because Mr. Jarvois does not allege any facts that link his age, race, or religion to Defendants' conduct, Defendants' motion to dismiss is GRANTED.

## II.    BACKGROUND

    Mr. Jarvois has filed three separate complaints in this case. The three complaints are as follows: The initial complaint ("the Original Complaint") was filed on May 3, 2018. Original Compl., Dkt No. 2. This document is on a form presumably provided by the *Pro Se* Office. It contains only a facts section and some attached documents which will be described below; the other

sections of the form are blank.  The first amended complaint (the "First Amended Complaint") was filed on July 10, 2018.  First Am. Compl., Dkt No. 5.  This document is on a form that is similar to, but not exactly the same as the form Mr. Jarvois used for his initial complaint.  In it, he left the facts section of this document blank, and only completed the sections on relief and causes of action; he attached the documents that accompanied his initial complaint along with additional pages.  What the Court is construing as Mr. Jarvois' second amended complaint (the "Second Amended Complaint") is an October 30, 2019 letter.  Second Am. Compl., Dkt No. 43.  The Second Amended Complaint attaches some, but not all of the documents attached to the complaint filed on July 10, 2018.  *Id.*

Because Mr. Jarvois is *pro se*, the Court will consider all three of the complaints together as the operative pleading, along with their attachments.[1]  The Court refers to Mr. Jarvois' Original Complaint, First Amended Complaint, and Second Amended Complaint collectively as the "Complaint."

"It is well-established that 'an amended complaint ordinarily supersedes the [previous complaint], and renders it of no legal effect."  *Fenner v. News Corp.*, No. 09 Civ. 9832 (BSJ)(RLE), 2011 WL 13359351, at *2 (S.D.N.Y. Apr. 26, 2011) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978)).  When the plaintiff is *pro se*, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]."  *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13 Civ. 5322 (KPF), 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g., Little v. City of New York*, No. 13 Civ. 3813 (JGK), 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff thus appears to believe that the Amended Complaint supplements, rather than replaces, the Original

---

[1] The Court may consider documents attached to a complaint on a motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 151 (2d Cir. 2002).

Complaint.  Because the plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Fleming v. City of New York*, No. 10 Civ. 3345 (AT), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Even though an amended complaint ordinarily supersedes the original and renders it of no legal effect, the Court considers both Plaintiff's original and amended complaints."  (internal quotation marks omitted)); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) (a *pro se* civil rights complaint "must be given the benefit of incorporation"  (internal quotation marks and citation omitted)).

In her May 15, 2020 order, the last page of which Mr. Jarvois submitted to the Court, Chief Judge McMahon warned Mr. Jarvois that "[b]ecause Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint."  First Am. Compl., Dkt No. 5 at 2.  Despite Chief Judge McMahon's clear instruction, Mr. Jarvois did not include claims he made in his initial complaint in subsequent complaints.  Nonetheless, because Mr. Jarvois is proceeding *pro se*, the Court has decided to consider all three complaints together as the operative pleading.

     a.  <u>Facts</u>

Mr. Jarvois is a 56-year-old African American man who identifies as a Rastafarian.  *See id.* at 5.  He worked as a porter in a building located at 73 Fifth Avenue from approximately 2009 until his termination on January 9, 2018.  *See id.* at 11, 13, 25; Ex. A, Dkt No. 5-1.  Mr. Jarvois' job was to "ensure the proper care and maintenance of the building" by completing "basic janitorial tasks."  First Am. Compl., Dkt No. 5 at 24–25.  His responsibilities included tasks such as taking out the garbage, cleaning the premises, and shoveling the sidewalk and stairs during the winter.  *Id.* at 25; Ex. A at 91–95.  The Complaint suggests that Mr. Jarvois worked at a building that was owned by multiple entities, including 73 Fifth Avenue Condominium and 73 Store Corp. ("73 Store Corp.").  *See id.* at 31, 75.  73 Store Corp. used Carole Ferrara Associates, Inc. ("CFA"), a property

management company, as its managing agent.  *Id.* at 85.

CFA performed upkeep and maintenance for the building.  *See, e.g.*, *id.* at 13.  Carole Ferrara was Mr. Jarvois' supervisor.  The Complaint alleges that, in that capacity, she set his schedule, oversaw his timesheets, evaluated his work performance, and monitored his attendance.  *See, e.g.*, *id.* at 18, 19, 24; Ex. A at 8.  Thomas Libretti was the superintendent at the building at which Mr. Jarvois worked.  Ex. A at 103.  The Complaint suggests that Mr. Libretti also evaluated Mr. Jarvois' work performance.  *Id.* at 97, 98, 103, 104; Second Am. Compl., Dkt No. 43 at 2, 3.  It is not clear which of the corporate entities was Mr. Jarvois' employer.  A number of documents in the Complaint suggest that Mr. Jarvois may have been employed by 73 Store Corp., while others suggest that he was employed by CFA.  *See* First Am. Compl., Dkt No. 5 at 33, 34, 110; *cf.* Ex. A at 71.  In any event, drawing all inferences in Mr. Jarvois' favor, the Complaint indicates that he was employed at all times by one of the corporate entities.

Mr. Jarvois alleges that around July 2015, he discovered that the building where he worked was "covered by the Union 32BJ."  Original Compl., Dkt No. 2 at 5.  He subsequently filed a grievance with the union, alleging that he was paid less than the contractual wage and other contract violations.  *Id.* at 5, 13.

Starting in May 2016, his supervisors began to assert that Mr. Jarvois had committed several infractions at work.  *See, e.g.*, First Am. Compl., Dkt No. 5 at 13, 15, 24; Ex. A at 96–98, 104, 110; Second Am. Compl., Dkt No. 43 at 2, 3.  Those included Mr. Jarvois' alleged failures to complete his duties in a timely manner, complete the tasks set forth in his job description, and adhere to his work schedule.  *See* First Am. Compl., Dkt No. 5 at 13, 15, 24; Ex. A at 96–98, 104, 110.  Mr. Jarvois was disciplined for these alleged infractions.  He received numerous written warnings, was suspended on three occasions, and was ultimately terminated on January 9, 2018.  First Am. Compl., Dkt No. 5 at 25.

Mr. Jarvois indicated he believes the "write-ups" started happening "right after [he] reported [Ms. Ferrara] to the Union." Ex. A at 89.  During this time period, Mr. Jarvois filed numerous grievances with the union, including claims that his hours had been changed without reason, that he was forced to work under hazardous conditions, that he had received an unjust warning letter, and that he was "being harassed" by Ms. Ferrara.  *See, e.g.*, First Am. Compl., Dkt No. 5 at 8–16; Ex. A at 11–30.  Mr. Jarvois commenced an action with the New York State Division of Human Rights against CFA after his termination.[2]  *See* First Am. Compl., Dkt No. 5 at 7, 9–10.

In the Complaint, Mr. Jarvois alleges that after Ms. Ferrara "got noticed by the Union 32BJ," she "hired a younger guy to clean the same area that I clean."  Original Compl., Dkt No. 2 at 5.  Mr. Jarvois also provides his age and race.  Specifically, Mr. Jarvois lists his year of birth and writes "African American/Rastafarian" in response to the question asking him for his race.  First Am. Compl., Dkt No. 5 at 5.  Mr. Jarvois also alleges that his "belief[] of [his] religion" was "questioned by others" when white people of his faith were not subject to such questioning.  Second Am. Compl., Dkt No. 43 at 3.  Aside from this information, there are no other facts or allegations in the Complaint or its attachments pertaining to Mr. Jarvois' age or race.

Mr. Jarvois also offers limited facts related to his religion; these are only marginally more developed than the facts he alleges related to his age or race.  Mr. Jarvois identifies himself as a Rastafarian.  First Am. Compl., Dkt No. 5 at 5.  Mr. Jarvois alleges that he told Ms. Ferrara that he could not work on Saturdays due to the Sabbath, and that she kept changing his work schedule.  Original Compl., Dkt No. 2 at 5.  In December 2016, Mr. Jarvois emailed Ms. Ferrara and asked that

---

[2] This complaint was eventually dismissed by the Division of Human Rights after an investigation finding no probable cause the support the discrimination claim Mr. Jarvois had asserted.  *See* Mot. to Dismiss Pl.'s Am. Compl., Ex. B, Dkt No. 58 at 2, 3.  As with the arbitration opinion, the Court is not adopting the findings of this adjudication but takes "judicial notice of the[se] records of state administrative procedures, as these are public records," to establish the existence of this decision.  *Evans v. New York Botanical Garden*, No. 02 Civ. 3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002).

she not schedule him to work on Saturdays so that he could observe the Sabbath.[3]  Ex. A at 4–6.

The Complaint does not indicate whether this request was accommodated.  As stated above, Mr.

Jarvois also alleges his religious "beliefs" were "questioned."  Second Am. Compl., Dkt No. 43 at 3.

Mr. Jarvois filed a grievance with the union in June 2016, alleging that Ms. Ferrara

"harassed" him.  First Am. Compl., Dkt No. 5 at 17.  Mr. Jarvois' Complaint also alleges he faced

"continue[d]" "harassment" and "more retaliation" from Mr. Libretti.  Second Am. Compl., Dkt

No. 43 at 3.  Mr. Jarvois further states that Mr. Libretti and Ms. Ferrara committed "disciplinary

violations" and "denied [him] due process as set forth in the bargaining agreement."  *Id.* at 3.  Mr.

Jarvois does not provide any detail beyond these generic assertions.

In his Complaint, Mr. Jarvois checked boxes indicating an intent to state claims for race and

religion-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), race-

based discrimination under 42 U.S.C. § 1981, age-based discrimination under the Age

Discrimination in Employment Act of 1967 (the "ADEA"), as well as age, race, and religion-based

discrimination under state law.  *See* First Am. Compl., Dkt No. 5 at 5.  Mr. Jarvois also alleges

harassment, retaliation, and wrongful termination by the Defendants in violation of his civil and due

process rights.  *See* Second Am. Compl., Dkt No. 43 at 2, 3.  Because Mr. Jarvois is proceeding *pro se*,

however, the Court does not limit its analysis of Mr. Jarvois' Complaint to these claims.  *See McLeod*

*v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  The Court construes Mr. Jarvois'

Complaint to assert the following causes of action:  (i) racial discrimination under Title VII; (ii)

religious discrimination under Title VII; (iii) retaliation under Title VII; (iv) racial discrimination

under § 1981; (v) age-based discrimination under the ADEA; (vi) breach of a collective bargaining

agreement under § 301 of the Labor Management Relations Act; and (vii) racial, religious, and age-

based discrimination under the New York State Human Rights Law and the New York City Human

---

[3] Before December 2016, Mr. Jarvois worked on Saturdays.  *See* Compl., Ex. A at 84.

Rights Law.

>    b. Procedural History

Mr. Jarvois first filed his Original Complaint on May 3, 2018.  Original Compl., Dkt No. 2.
On May 15, 2018 Chief Judge McMahon ordered Mr. Jarvois to amend the Original Complaint.
Order, Dkt No. 4.  In that order, Chief Judge McMahon directed to Mr. Jarvois to "provide a short
and plain statement of the relevant facts supporting each claim against each defendant."  *Id.*  She
also directed Mr. Jarvois, *inter alia*, to "give the names and titles of all relevant persons, describe all
relevant events . . . [and] to describe how each defendant's acts or omissions violated [his] rights."
*Id.*  Mr. Jarvois amended the Original Complaint on July 10, 2018.  *See* First Am. Compl., Dkt No. 5.
Despite the directions in Chief Judge McMahon's order, the only actions Mr. Jarvois took to amend
the Original Complaint were to state the relief he was seeking, check boxes for his causes of action,
and attach additional documents.  *Id.*

Defendants moved to dismiss the First Amended Complaint on February 28, 2019.  Defs.'
Mot. to Dismiss, Dkt No. 22.  Mr. Jarvois filed his opposition on April 2, 2019.  Pl.'s Opp'n, Dkt
No. 27.  Defendants submitted their reply on April 8, 2019.  Defs.' Reply, Dkt No. 30.  On August
19, 2019, the Court issued a memorandum opinion and order dismissing Mr. Jarvois' claims.  Mem.
Op. & Order, Dkt No. 35.  Mr. Jarvois' claims against Mr. Libretti were dismissed without prejudice
because Mr. Jarvois had failed to serve Mr. Libretti.  His claims under Title VII, the ADEA, and
Due Process clause as asserted against Ms. Ferrara were dismissed with prejudice, because, as a
private individual, she was a proper defendant with respect to those claims.  His claims under § 1981
and § 301 of the Labor Management Relations Act (the "LMRA") as asserted against Ms. Ferrara
were dismissed without prejudice, and he was granted leave to replead.  His state law claims were
also dismissed without prejudice.  The Court granted Mr. Jarvois leave to amend his Complaint to
replead the claims that it had dismissed without prejudice within thirty days.

On September 21, 2019, the Court noted that Mr. Jarvois had not amended his Complaint and entered a final judgment for Defendants. Order, Dkt No. 37.  On October 21, 2019, the Court issued an order vacating the judgment because Mr. Jarvois had not received a copy of the Court's August 19, 2019 memorandum opinion and order until after the case was closed.  Order, Dkt No. 42.  The Court again granted Mr. Jarvois leave to amend his complaint.  *Id.*  On October 30, 2019, Mr. Jarvois submitted a letter expressing confusion as to why the *Pro Se* Office was instructing him to submit documents that he had already submitted.  Pl.'s Ltr., Dkt No. 43.  On March 5, 2020, the Court once more granted Mr. Jarvois leave to amend his complaint within 21 days.  Order, Dkt No. 46.

Mr. Jarvois did not file an amended complaint within the allotted time; indeed, he did not file anything at all.  In a July 2, 2020 order, the Court construed Mr. Jarvois' October 30, 2019 letter as an amended complaint.  Order, Dkt No. 48.  Defendants moved to dismiss the Complaint on July 23, 2020, and Mr. Jarvois was served with the motion on the same day.  Dkt Nos. 51, 52.  However, due to repeated procedural deficiencies, Defendants' motion was not properly filed with the Court until August 19, 2020.  Dkt Nos. 51, 56, 57.  On August 4, 2020, the Court received a series of letters from Mr. Jarvois, none of which addressed Defendants' motion to dismiss.  Dkt Nos. 53–55.  Notwithstanding the lack of any opposition briefing, Defendants submitted a reply on August 20, 2020.  Dkt No. 61.

## III.    LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit*

*Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).

 To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Twombly*, 550 U.S. at 555–56). To determine plausibility, courts follow a "two-pronged approach." *Iqbal*, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

 When deciding a motion to dismiss, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

 Because Mr. Jarvois is proceeding *pro se*, the Court must liberally construe his allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474; *see also, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests."). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting

*Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).  Nevertheless, "dismissal of a *pro se* complaint

is . . . appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements."

*Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65

(2d Cir. 1997)).

 "[T]he failure to oppose a 12(b)(6) motion does not justify dismissal of a [*pro se*] complaint."

*JCG v. Ercole*, No. 11 Civ. 6844 (CM)(JLC), 2014 WL 1630815, at \*5 (S.D.N.Y. Apr. 24, 2014)

(citations omitted), *report and recommendation adopted*, No. 11 Civ. 6844 (CM)(JLC), 2014 WL 2769120

(S.D.N.Y. June 18, 2014); *see also Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010); *McCall v.*

*Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).  "Because a motion under Rule 12(b)(6) presents a pure

legal question . . . the district court is equipped to make a determination on the merits." *Goldberg*,

599 F.3d at 183–84; *see also McCall*, 232 F.3d at 322–23 ("the sufficiency of a complaint is a matter of

law that the court is capable of determining based on its own reading of the pleading and knowledge

of the law.").

## IV. DISCUSSION

 Mr. Jarvois' claims under Title VII, the ADEA, and Due Process clause as asserted against

Ms. Ferrara were dismissed with prejudice, because as a private individual, she was a not proper

defendant with respect to those claims.  Those claims remain dismissed, notwithstanding the

amendment.  The remainder of this opinion focuses on the claims for which Mr. Jarvois was granted

leave to amend.  Those are his claims against Mr. Libretti, his state law claims, and his claims under

§ 1981 and § 301 of the LMRA as asserted against Ms. Ferrara.  The Court considers each of those

claims below.

  a. <u>Personal Jurisdiction over Mr. Libretti</u>

 The Court previously dismissed without prejudice Mr. Jarvois' claims against Mr. Libretti

because he had failed to serve Mr. Libretti.  In its opinion dismissing those claims, the Court

expressly invited Mr. Jarvois to request an extension of the deadline to serve Mr. Libretti.  Mem. Op. & Order, Dkt No. 35 at 9.  Despite this invitation, Mr. Jarvois did not request an extension.  And there is no evidence that he has taken any efforts to serve Mr. Libretti in the meantime.  Accordingly, there is no reason to disturb the Court's previous dismissal of Mr. Jarvois' claims against Mr. Libretti.

   b. <u>Claim Under § 1981</u>

   Mr. Jarvois' claim for racial discrimination under § 1981 fails because he has not pleaded facts sufficient to support an inference of discrimination by Ms. Ferrara.  "Section 1981 provides that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting 42 U.S.C. § 1981).  The pleading standards are generally the same for Title VII and section 1981 claims.  *See Awad v. City of N.Y.*, No. 13 civ. 5753 (BMC), 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014) ("Discrimination claims under § 1981 . . . are analyzed under the same framework and pleading standard as Title VII claims."  (citing *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam)).  To defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  At the pleading stage, the plaintiff need only "sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.

   "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an

'impermissible reason,' i.e., a discriminatory reason." *Vega*, 801 F.3d at 87 (quoting *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)).  "A plaintiff can meet that burden through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination." *Id.* (citations omitted).  "A plaintiff may prove discrimination indirectly either by . . . showing that the employer's stated reason for its employment action was pretext to cover up discrimination or by otherwise creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Id.* (citations and quotation omitted).  "At the pleading[] stage . . . a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* (citation omitted).

An adverse employment action is "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (quotation, citations, and emphasis omitted).  The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 88 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

"An inference of discrimination can arise from circumstances including . . . 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  "[A]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an

12

individual outside the employee's protected class." *Id.* at 312–13 (citations omitted).  Still, a plaintiff must plausibly allege that her protected characteristic was causally linked to the adverse employment action.  "Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).  Thus, courts should not "consider[] personnel decisions that" are not "link[ed] or correlat[ed] to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals." *Id.* (citations omitted).

Here, Mr. Jarvois alleges that Ms. Ferrara took disciplinary action against him and eventually terminated him.  He also states his race and alleges that his "belief[] of [his] religion" was "questioned by others" when white people of his faith were not subject to such questioning.  Second Am. Compl., Dkt No. 43 at 3.  Mr. Jarvois has not alleged that any of the disciplinary actions Ms. Ferrara took were motivated at least in part by a discriminatory reason; indeed, he does not even specify whether Ms. Ferrara was among the "others" who questioned his belief in his religion.  He does not allege that Ms. Ferrara treated white employees more favorably or that he was replaced by a white employee after he was terminated.  So the facts Mr. Jarvois alleges are not sufficient to suggest a plausible inference of discriminatory motivation on Ms. Ferrara's part.  Accordingly, Mr. Jarvois' § 1981 claim against Ms. Ferrara is dismissed.

The Court is mindful of the Second Circuit's instruction that "district judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).  And courts give *pro se* litigants a chance to replead when a problem with the cause of action is not "substantive," but rather the result of "inartful[]" pleading. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).  But "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016) (quotation omitted).  The Court

has already granted Mr. Jarvois leave to replead this claim twice.  Neither time did Mr. Jarvois make any progress toward curing his pleading deficiencies.

"[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough."  *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (citations omitted).  We have reached that point in this case.  *See, e.g., Best v. City of New York*, No. 12-CV-7874 (RJS)(SN), 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) (denying leave to amend where plaintiff had already been given two opportunities to do so, and noting that "the Court can only afford [plaintiff] so many bites at the apple"); *Adams v. Orange Cnty. of New York*, No. 13-CV-8549 (VB), 2015 WL 5459794, at *1 (S.D.N.Y. Sept. 1, 2015) (denying *pro se* plaintiff leave to amend his complaint for a third time when plaintiff had already had two chances to amend); *Palacio v. City of New York*, 489 F. Supp. 2d 335, 343 (S.D.N.Y. 2007) (same).

### c.   Alleged Breach of Collective Bargaining Agreement

The Court construes Mr. Jarvois' Complaint to claim that the Defendants violated a collective bargaining agreement.[4]  But because Mr. Jarvois makes no plausible allegation that Ms. Ferrara is a party to the collective bargaining agreement, these claims also fail.

Mr. Jarvois alleges that Ms. Ferrara did not "follow[] the protocol[s]" as "set forth by the bargaining agreement."  First Am. Compl, Dkt No. 5 at 3.  Mr. Jarvois then lists disciplinary actions Ms. Ferrara took against him.  *Id.*  Because "Section 301 of the [LMRA] . . . 'governs actions by an employee against an employer for breach of a collective bargaining agreement,'" the Court construes Mr. Jarvois to assert a claim under § 301 of the LMRA.  *Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d

---

[4] In their motion to dismiss, Defendants argue that any claims Mr. Jarvois asserts alleging breach of the collective bargaining agreement were decided by an arbitration between 73 Corp. and Mr. Jarvois' supposed union.  *See* Dkt No. 60 at 2–3.  The arbitration decision that Defendants reference is neither attached to the complaint nor incorporated by reference.  Accordingly, the Court has not considered this argument in its decision regarding Mr. Jarvois' § 301 claim.

201, 203 (2d Cir. 1990)). "Suits arising under Section 301 include 'those seeking to vindicate "uniquely personal" rights of employees such as wages, hours, overtime pay, and wrongful discharge.'" *Id.* (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562 (1976)).

The LMRA provides for federal jurisdiction over suits arising from alleged breaches of collective bargaining agreements between labor unions and employers. *See* 29 U.S.C. § 185(a). However, as a general matter, LMRA claims may not be asserted against parties that are not signatories to the collective bargaining agreement in question.[5] *See, e.g.*, *Aponte v. Buono*, No. 11-CV-1077 (CBA)(MDG), 2011 WL 6812924, at *7 (E.D.N.Y. Dec. 28, 2011) (explaining that plaintiff could not sue party that was not a signatory to the collective bargaining agreement under LMRA § 301); *Gorenflo v. Penske Logistics*, 592 F. Supp. 2d 300, 306–07 (N.D.N.Y. 2009) (explaining that LMRA claims may not be asserted against parties that are not signatories to the collective bargaining agreement); *Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Const. Corp.*, No. 04-CV-0915 (CPS), 2007 WL 526621, at *4 (E.D.N.Y. Feb. 13, 2007) ("The [LMRA] extends only to suits brought against defendants who are parties to the underlying collective bargaining agreement."); *Duane Reade v. Allied Trades Council*, No. 04-CV-3542 (BSJ), 2005 WL 3038645, at *4 (S.D.N.Y. Oct. 7, 2005).

Mr. Jarvois has provided the Court with little information about the collective bargaining agreement that he references in his Complaint. The documents attached to his Complaint suggest that the union and his employer were signatories to the collective bargaining agreement. *See* Ex. A at 31. But Mr. Jarvois' filings are devoid of any suggestion that Ms. Ferrara is a signatory to the collective bargaining agreement. This is fatal to his § 301 claim. Because a plaintiff can only state a claim under LMRA § 301 against parties to the collective bargaining agreement, the Court dismisses

---

[5] The Second Circuit has recognized limited circumstances under which a non-signatory to a collective bargaining agreement may be bound. *See Local Union No. 38 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004). Those circumstances are not present in this case.

this claim.  *See, e.g.*, *Gorenflo*, 592 F. Supp. 2d at 306–07 (dismissing plaintiff's LMRA § 301 claim asserted against individual defendants where his complaint failed to allege that they were signatories to the collective bargaining agreement).

Mr. Jarvois was granted leave to amend his § 301 claim twice.  Mr. Jarvois still has not alleged any facts suggesting that Ms. Ferrara is a signatory to the collective bargaining agreement.  As with his § 1981 claim, he has not made any progress toward curing his pleading deficiencies.  Because the Court concludes that granting leave to amend is unlikely to be productive, the Court denies Mr. Jarvois leave to replead his LMRA § 301 claim.[6]

   d. <u>State Law Claims</u>

To the extent that Mr. Jarvois asserts claims under state law, the Court declines to exercise supplemental jurisdiction over any such claims.  Pursuant to 28 U.S.C. § 1367(a),

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

However, pursuant to 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over a plaintiff's state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction."  The Second Circuit counsels against exercising supplemental jurisdiction in such a situation:  "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (internal quotations omitted) (quoting *Castellano* v. *Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of Mr. Jarvois' claims based on a federal question under 28 U.S.C.

---

[6] The Court makes no determination as to whether Mr. Jarvois might have a viable LMRA claim against a signatory to the collective bargaining agreement.

§ 1331, and there being no other basis for federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Mr. Jarvois' state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, any such claims are dismissed without prejudice.

### V.   CONCLUSION

For the reasons stated above, Mr. Jarvois' claims under § 1981 and § 301 of the LMRA as asserted against Ms. Ferrara are dismissed with prejudice. Mr. Jarvois is denied leave to replead these claims. The Court does not opine on whether Mr. Jarvois might have a viable claim against a signatory to the collective bargaining agreement under this statute. The Court notes that nothing in this opinion prevents him from asserting such claim in the future.

Mr. Jarvois' claims as asserted against Mr. Libretti are dismissed without prejudice. Mr. Jarvois' state law claims are also dismissed without prejudice.

The Court requests that counsel for Defendants provide Mr. Jarvois with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Court for the Southern and Eastern Districts of New York 7.2. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment for Defendant Carole Ferrara, to close this case, and to send a copy of this opinion to Plaintiff by first class and certified mail.

SO ORDERED.

Dated: November 9, 2020
New York, New York

GREGORY H. WOODS
United States District Judge